```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE SOUTHERN DISTRICT OF ALABAMA
                       NORTHERN DIVISION


ROBERT D. THOMAS,                   :
                                    :
     Plaintiff,                     :
                                    :
vs.                                 :
                                    :     CIVIL ACTION 15-0214-M
CAROLYN W. COLVIN,                  :
Social Security Commissioner,       :
                                    :
     Defendant.                     :
```

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling denying claims for disability insurance benefits and Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action was referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and S.D.Ala. Gen.L.R. 73(b) (*see* Doc. 23). Oral argument was waived in this action (Doc. 22). After considering the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **REVERSED** and that this action be **REMANDED** for further action not inconsistent with the Orders of this Court.

1

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Thomas was twenty-five years old, had a limited education (*see* Tr. 26) and previous work experience as a fish processor and construction worker (Tr. 49).  Plaintiff alleges disability due to lumbar degenerative disc disease, obesity, and mild mental retardation (Doc. 12).

The Plaintiff applied for disability benefits and SSI on February 2, 2012, asserting a disability onset date of July 1, 2012[1] (Tr. 17, 150-63).  An Administrative Law Judge (ALJ) denied benefits, determining that although he could not return to his past work, there were light work jobs that Thomas could perform (Tr. 17-27).  Plaintiff requested review of the hearing decision

---

[1]Thomas initially asserted an onset date of October 31, 2009, but amended it at the evidentiary hearing (*see* Tr. 17, 37).

(Tr. 137-40), but the Appeals Council denied it (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Thomas alleges that: (1) The ALJ improperly rejected the conclusions of his treating physician, Dr. Perry Timberlake; (2) the ALJ's statement of Plaintiff's residual functional capacity (hereinafter *RFC*) is improperly presented; (3) the ALJ's hypothetical questions to the Vocational Expert (hereinafter *VE*) did not properly reflect all of his limitations; (4) the ALJ did not develop a full and fair record; (5) the Appeals Council did not properly consider the newly-submitted report of Psychologist Donald Blanton; and (6) he meets the requirements of Listing 12.05C (Doc. 13). Defendant has responded to—and denies—these claims (Doc. 18). The relevant evidence of record follows.[2]

On March 15, 2011, Dr. Larry O. Skelton physically examined Thomas at the request of the Social Security Administration (hereinafter *SSA*) (Tr. 266-70). Plaintiff complained of back pain of thirteen years' duration though he had never had treatment for it. The Doctor noted normal range of motion (hereinafter *ROM*) in the fingers, wrists, elbows, shoulders, ankles, knees, hips, and cervical and lateral spine; there were

---

[2]The Court notes that ninety percent of the record medical evidence pre-dates Thomas's asserted onset date of July 1, 2012 (12/162 pages); four of those twelve pages post-date the date of the ALJ's decision. As such, the Court will review only what is considered relevant to the claims brought in this action.

3

mild limitations in the dorsolumbar spine.  He could stand on his toes and heels, squat and rise, and had normal gait without assistance.  Thomas's strength in his grasp, upper arms, and lower legs was full; sensory and strength were normal in all four extremities.

On March 18, 2011, Psychologist Michael P. Griffin, at the request of the SSA, examined Plaintiff who stated that he had dropped out of school in eleventh grade and had often been placed in special education classes (Tr. 272-77).  The Examiner administered the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV), but declined to reveal the scores and found them invalid noting that "Thomas' level of effort and attentiveness was sub-optimal" and that "he generally put forth little (if any) effort on a majority of the subtests" (Tr. 274).  On exam, the Psychologist found Plaintiff oriented in four spheres, with attention and immediate memory intact; recent memory was slightly impaired and remote memory was adequate though his fund of knowledge was "obviously impoverished" (Tr. 274).  Thomas had concrete reasoning abilities and his thought processes were logical and organized; his mood was euthymic though he claimed slight anxiety and general irritability.  The Psychologist found no evidence "for any clinical diagnosis" of any kind (Tr. 275) with a prognosis as follows:

4

> Mr. Thomas appears to have a valid history of learning difficulties; however, there is no evidence to substantiate the presence of mental retardation. Nonetheless, the documented presence of learning difficulties, would severely impact Mr. Thomas' ability to continue to perform well in school without assistance, as well as his ability to learn new work tasks. That being said, there is no reason to believe he would be incapable of learning the skills required for a number of labor positions.

(Tr. 275). The Psychologist found him "quite capable of maintaining stable employment . . . if [] provided appropriate support and supervision;" he suggested a financial guardian, however (Tr. 276). Griffin noted that Thomas had not "describe[d] any adaptive deficits consistent with mental retardation" (Tr. 275).

On April 19, 2011, Dr. Robert Estock reviewed the evidence of record as of that date and completed a Psychiatric Review Technique Form at the request of the SSA; he never personally examined Plaintiff (Tr. 278-91). The Doctor determined that Thomas's mental impairments were not severe and that he suffered from an organic mental disorder; more specifically, he suffered from a reading disorder. Estock determined that Plaintiff had no restrictions in his activities of daily living or in maintaining social functioning; he had only mild difficulties in maintaining concentration, persistence, or pace (Tr. 289). The

5

Doctor noted that Thomas was not taking psychotropic medication and was not seeking mental health treatment (Tr. 291).

On April 19, 2011, Dr. Robert H. Helipern reviewed the evidence of record as of that date and completed a physical RFC assessment at the request of the SSA; he never personally examined Thomas (Tr. 293-300).  Noting that Plaintiff's primary diagnosis was obesity, the Doctor indicated that Plaintiff could lift and carry up to fifty pounds occasionally and twenty-five pounds frequently and could sit and stand or walk for up to six hours per eight-hour workday; he would have no problems with hand or foot controls.  Though Thomas could never balance, he could frequently climb, stoop, kneel, crouch, and crawl; Helipern found no manipulative, visual, communicative, or environmental limitations except that Plaintiff should avoid concentrated exposure to machinery and heights.

On April 27, Thomas was at home when it was hit by a tornado, prompting him to go to the Hale County Hospital Emergency Room for swelling and tenderness in the right elbow area and pain in his right side and right lower back (Tr. 322-27).  Plaintiff was given a cortisone shot and a single Tylenol #3.[3]  An x-ray of the elbow showed no dislocation or fracture.

There are no medical records for the next nine months

---

[3]**Error! Main Document Only.***Tylenol* with codeine is used "for the relief of mild to moderately severe pain."  *Physician's Desk Reference* 2061-62 (52nd ed. 1998).

6

until, on February 10, 2012, Dr. Perry Timberlake saw Plaintiff for a headache that caused pain down his neck into his back that had become worse following the tornado; he also had right elbow pain (Tr. 330-31). Timberlake noted Thomas's weight of 298 pounds and body mass index of 44; he noted moderate tenderness in the lumbosacral area and neck with full ROM in the left elbow. The Doctor found Plaintiff "completely and totally disabled to do gainful work now or in the future" because of lumbar disc disease, chronic neck pain, morbid obesity, an academic/educational problem, depression and possible hypertension; he prescribed Lortab[4] and Amitriptyline[5] (Tr. 331).

On March 6, Plaintiff underwent an MRI of the lumbar spine that showed a small broad-based central/right paracentral disc protrusion superimposed on a disc bulge at L5-S1 with no evidence of neural impingement; an MRI of the cervical spine was negative (Tr. 338-39).

On June 13, Dr. Timberlake examined Thomas for back pain and a burning sensation; the Doctor noted that Plaintiff was on no medications, weighed 324 pounds and was tender in the lumbosacral spine (Tr. 356-57). Lortab, Amitriptyline, and an

---

[4]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[5]**Error! Main Document Only.***Amitriptyline*, marketed as *Elavil*, is used to treat the symptoms of depression. *Physician's Desk Reference* 3163 (52nd ed. 1998).

7

antibiotic were prescribed. On August 31, Thomas complained of back pain; his weight was 340 pounds (Tr. 364-65). Dr. Timberlake's only note following a physical examination was that Thomas was alert, but he renewed prescriptions for Lortab and Amitriptyline. On March 15, 2013, Plaintiff complained of back and neck pain; he weighed 353 pounds (Tr. 362-63). The Doctor noted tenderness in the neck and lumbosacral area and prescribed Tylenol #3 and amitriptyline.

On September 11, nearly six months after his most recent examination, Dr. Timberlake complete a physical medical source statement in which he indicated that Thomas was capable of sitting two and standing/walking one hour during an eight-hour day; he could lift and/or carry five pounds occasionally and one pound frequently (Tr. 367). The Doctor went on to find that Plaintiff could occasionally perform gross and fine manipulation, reach, operate motor vehicles and work with or around hazardous machinery; he could use arm and leg controls, climb, and balance, only rarely, and could never bend or stoop. Timberlake said that Plaintiff would miss at least three days a month because of his impairments. The Doctor also completed a pain questionnaire that indicated that Thomas's pain was profound, intractable, and virtually incapacitating; that physical activity would increase his pain to such an extent that bed rest and/or medication would be necessary; and that

8

medications would place severe limitations on even the simplest everyday tasks (Tr. 368).  This concludes the Court's summary of the evidence.

In bringing this action, Plaintiff first claims that the ALJ improperly rejected the conclusions of his treating physician, Dr. Perry Timberlake (Doc. 13, pp. 6-7).  It should be noted that "although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981);[6] *see also* 20 C.F.R. § 404.1527 (2015).

In his decision, the ALJ assigned little weight to Dr. Timberlake's conclusions and his physical medical source statement, noting that they were inconsistent with his own examination findings and Thomas's reports of his abilities and limitations (Tr. 25).  The ALJ went on to point out that, in his examination of February 10, 2012, the Doctor noted only moderate tenderness in Plaintiff's lumbosacral and neck while finding him completely and totally disabled to work; Timberlake reached this conclusion without benefit of any objective testing and in spite

---

[6]The Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

9

of the fact that there was no evidence that he had ever examined Thomas before that date (*see* Doc. 13, p. 3).  The ALJ also pointed out that Plaintiff continued to work for four more months after Timberlake declared him disabled (Tr. 25).  The Court also notes that the Doctor had last examined Thomas six months earlier when he completed his physical medical source statement.  The Court finds no merit in Thomas's claim that the ALJ did not properly consider the conclusions of his treating physician.

Plaintiff next claims that the ALJ's statement of his RFC is improperly presented.  Thomas asserts that the RFC should have been expressed "in terms of limitations rather than including impairments" (Doc. 13, p. 4).  More specifically, Plaintiff objects to the conclusions that he has difficulty reading, might be functionally illiterate, and takes prescription medications.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities."  Social Security Ruling 96-8p, *Titles II and XVI:  Assessing Residual Functional Capacity in Initial Claims*, 1996 WL 374184, *3.  The Court notes that the ALJ is responsible for determining a claimant's RFC.  20 C.F.R. § 404.1546.  However, the Court also notes that the social security regulations state that Plaintiff is responsible

10

for providing evidence from which the ALJ can make an RFC determination.  20 C.F.R. § 404.1545(a)(3).

In his decision, the ALJ found that Plaintiff had the RFC

> to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the claimant can lift or carry twenty pounds occasionally and ten pounds frequently.  He can sit up to six hours in an eight-hour day and can stand or walk in combination up to six hours in an eight-hour day.  However, the claimant cannot perform around work hazards but can frequently climb, balance, stoop, kneel, crouch, or crawl.  The claimant has difficulty reading and may be functionally illiterate.  Additionally, he takes prescription narcotic medication for back pain.

(Tr. 22).  Light work has been defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

At the outset, the Court notes that Thomas's argument relies, in good measure, on accepting his own testimony and the conclusions of Psychologist Donald W. Blanton (Doc. 13, p. 4). The Court finds this reliance misplaced as Plaintiff's credibility was found lacking by the ALJ (Tr. 23-24), yet no claim has been raised in this action for that rejection. As for the Psychologist's conclusions, they were not made until December 18, 2013 (Tr. 370-72), more than a month after the ALJ's determination of November 8, 2013; the ALJ can hardly be held responsible for evidence not in evidence or existence.[7]

Thomas's claim asserts that the ALJ did not properly take into account his need for narcotic medications in fashioning the RFC. The evidence of the limitations coming from those medications, however, came from Plaintiff himself; that evidence was discounted without challenge. The only other evidence came from Dr. Timberlake though Thomas fails to point to any in making this argument (Doc. 13, pp. 4-5); the Court has already determined that Dr. Timberlake's conclusions regarding Plaintiff's abilities and limitations were not supported by substantial evidence.

Thomas also expressed concern that the ALJ's RFC determination did not properly frame his reading difficulty or

---

[7] The Court will review Blanton's conclusions later, though, in connection with a separate claim raised by Thomas.

12

functional illiteracy in terms of limitation. The Court is unsure what more could have been said by the ALJ to define the limitation of an inability to read—and Thomas does not offer one—but the Court finds this to be, at most, harmless error. The Court finds no merit in Plaintiff's claim that the ALJ's RFC determination is improperly presented, constructed, or framed.

Thomas next claims that the ALJ's hypothetical questions to the VE did not properly reflect all of his limitations (Doc. 13, pp. 4-5).[8] The Eleventh Circuit Court of Appeals has held that an ALJ's failure to include severe impairments suffered by a claimant in a hypothetical question to a vocational expert to be reversible error where the ALJ relied on that expert's testimony in reaching a disability decision. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985).

The Court found no merit in Plaintiff's claim that the ALJ improperly framed his RFC. The Court finds that this claim relies on the same evidence cited earlier and, as such, that it gains no momentum here. The Court further notes that the ALJ's third question to the VE encompassed all of the findings in the RFC (*see* Tr. 49-52); the VE listed specific jobs, relied on by the ALJ, that could Thomas could perform (Tr. 27). This claim is without merit.

---

[8]Although this claim was not separately set out, it was argued alongside Thomas's claim that the ALJ's RFC determination was improperly framed.

Thomas next claims that the ALJ did not develop a full and fair record.[9] He more specifically asserts that he requested IQ testing, but the ALJ did not respond (Doc. 13, p. 8; *cf.* Tr. 261). The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the ALJ even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). However, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1269 (11th Cir. 2007) (*citing Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)).

The Court reminds Plaintiff that a consultative examination was performed by Psychologist Griffin (Tr. 272-77). As noted earlier, Griffin administered the WAIS-IV but rendered the scores invalid since "Thomas' level of effort and attentiveness was sub-optimal" and "he generally put forth little (if any) effort on a majority of the subtests" (Tr. 274). In addition to Griffin's examination findings, the ALJ considered Dr. Estock's psychological evaluation (Tr. 278-91). Both Griffin and Estock found Plaintiff able to work; Griffin also found no evidence that Thomas suffered from adaptive deficits indicating mental

---

[9]The Court notes that this claim was not separately made, but was subsumed within the claim against the Appeals Council, yet to be discussed.

14

retardation.  The ALJ gave significant weight to those opinions (Tr. 24-25).  The Court finds no error in the ALJ's decision not to order a second consultative psychological evaluation.

Plaintiff next claims the Appeals Council did not properly consider the newly-submitted report of Psychologist Donald Blanton (Doc. 13, pp. 7-12).  In making this claim, Thomas asserts that the new evidence demonstrates that he meets the requirements of Listing 12.05C, his sixth claim in this action.

The Court notes that the Appeals Council considers additional evidence submitted by a claimant if it is new, material, and chronologically relevant.  20 C.F.R. § 404.970(b).  The Appeals council must then decide if the new information renders the ALJ's "action, findings, or conclusion [] contrary to the weight of the evidence currently of record."  *Id.*  The Court further held that "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous."  *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1262 (11th Cir. 2007).  The newly-presented evidence was as follows.

On December 18, 2013, Psychologist Blanton examined Thomas at the request of his attorney and found his thoughts and conversation logical (Tr. 370-72).  Associations were intact and affect was flat but appropriate; he was not confused but was

15

depressed.  No psychomotor retardation or agitation was noted; Thomas was oriented in four spheres.  Insight was limited, but judgment was fair for work and financial decisions.  Plaintiff took the WAIS-IV and obtained a full-scale IQ score of 61, placing him in the mild range of mental retardation; the Psychologist thought this score was valid.  On the Wide Range Achievement Test-III, Thomas was able to read and spell at the first grade level and perform math as well as a fourth-grader.  The Minnesota Multiphasic Personality Inventory was not administered because of Plaintiff's low intellect and poor reading ability; the Beck Depression Inventory II demonstrated moderate depression.  Blanton indicated that the testing showed that Thomas was functionally illiterate.  The Psychologist went on to offer the following opinion:

> Thomas has marked limitations that seriously interfere with his ability to perform work-related activities on a day-to-day basis in a regular work setting in the following areas[:]  understand detailed or complex instructions, use judgment in detailed or complex instructions.  It is my opinion that his emotional problems have been present at this level for at least one year and that his mental retardation has been a lifelong condition.  Is also my opinion that his emotional problems are likely to increase if he is placed under stress especially that of a job without relief from his pain.
> Robert Thomas demonstrates deficits in adaptive functioning due to his mental retardation manifested prior to age 22 in

16

>   the following areas:  communication, work,
>   functional academic skills.

(Tr. 371-72).

As noted earlier, Plaintiff has asserted that he meets the requirements of Listing 12.05C for intellectual disability.  The introductory notes to Section 12.05 state that "[i]ntellectual disability refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05 (2015).  Subsection C requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (2015).

The Court finds that Blanton's examination provides information that could support a finding of disability under Listing 12.05C.

The Appeals Council, in denying the review of the new evidence, stated as follows:

>   In looking at your case, we considered
>   the reasons you disagree with the decision
>   in the material listed on the enclosed Order
>   of Appeals Council.

17

> We considered the Administrative Law Judge's action, findings, and conclusion contrary to the weight of the evidence of record.
> We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Tr. 1-2).[10]

The Appeals Council is not required "to give a detailed rationale for why each piece of new evidence submitted to it does not change the ALJ's decision." *Mitchell v. Commissioner of Social Security Administration*, 771 F.3d 780, 784 (11th Cir. 2014). However, the Council is required "to apply the correct legal standards in performing its duties." *Id.*

The Court finds that there is nothing in the Appeals Council's denial to indicate that it properly considered whether the newly-submitted evidence met the requirements of Listing 12.05C. As the Council has not provided reasoning sufficient for this Court to determine that it conducted proper legal analysis under *Mitchell*, the Appeals Council decision must be reversed. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991) ("The Secretary's failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal").

---

[10] The second paragraph, on its face, indicates error in the ALJ's decision. The Court presumes it contains a scrivener's error.

Thomas has raised multiple claims in bringing this action. Though most are without merit, his claim that the Appeals Council did not properly consider newly-submitted evidence has merit.  Based on review of the entire record, the Court finds that the Commissioner's decision is not supported by substantial evidence.  Therefore, it is **ORDERED** that this action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion, to include, at a minimum, a supplemental hearing for a determination as to whether Plaintiff meets Listing 12.05C requirements.

DONE this 17th day of February, 2016.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE
